James R. Belcher
WY Bar # 5-2556
Tim Stubson
WY Bar # 6-3144
Crowley Fleck PLLP
237 Storey Boulevard, Suite 110
Cheyenne, WY 82009
Telephone (307) 426-4105
Facsimile (307) 426-4099
Attorneys for First Interstate Bank

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN CAMPBELL McTIERNAN, JR., | ) | Case No. 13-20987 |
| | ) | |
| Debtor. | ) | |

**FIRST INTERSTATE BANK'S**
**MOTION TO CONVERT CASE TO CHAPTER 7**

Pursuant to 11 USC § 1112(b), First Interstate Bank ("First Interstate"), through its attorneys Crowley Fleck PLLP, moves the Court to convert this case to a case under Chapter 7 of the Bankruptcy Code. In addition to the factors set forth in 11 USC § 1112(b)(4), John McTiernan, Jr. (the "Debtor") has filed and administered his Chapter 11 case as an absentee debtor under a power of attorney and done so in bad faith. Consequently, conversion of this case to a Chapter 7 case is warranted and is in the best interest of creditors and the estate. A more detailed discussion of the facts and governing law follows.

**FACTUAL BACKGROUND**

First Interstate granted the Debtor a $5,500,000 five year term loan secured by the 2,782 Bear Claw Ranch in Sheridan County, Wyoming. Approximately $4,600,000 paid off existing mortgage loans and the balance was to be used for ranch improvements. The loan performed until the Debtor faced criminal charges in 2009. From that point on, loan payments were renegotiated and redefined a number of times.

In August 2012, the Debtor's conviction of criminal charges was affirmed on appeal. Shortly thereafter the Debtor listed the ranch for sale for $10,000,000, which exceeded an appraisal the Debtor and First Interstate had commissioned. The Debtor reported to prison in April 2013. First Interstate discovered that junior liens had been filed against the ranch. One month later, First Interstate learned that a third party held a first right of refusal to purchase a portion of the ranch. The Debtor received two offers from the same potential purchaser in June of 2013. The Debtor rejected an $8,000,000 purchase offer. Shortly thereafter, First Interstate decided to initiate a statutory mortgage foreclosure to collect its loan.

The Debtor filed his Chapter 11 petition in this case on October 18, 2013 just hours before the foreclosure sale scheduled by First Interstate. The Debtor's sole purpose in filing this case was to prevent First Interstate from collecting the $5,567,678 debt secured by that mortgage.

The Debtor's Statement of Financial Affairs and Schedules reveal his income history and financial condition. In the two+ years preceding his Ch 11 filing, the

Debtor's income reportedly totaled about $235,000 per year from residual payments from movies he had directed. He lists total assets he values at approximately $10.5 million and total liabilities of $5.9 million. The assets are comprised 95% of the Bear Claw Ranch, with the balance consisting largely of interests in wholly owned corporations. The Debtor has not filed the Periodic Report for closely held entities required by Fed.R.Bankr.P. 2015.3 for those entities: Bear Claw Cattle Company, Bear Claw Pictures, Camas Prairie, Land/McTiernan, Tongue River Pictures or Ten Sleep.

First Interstate is the largest scheduled creditor, with a $5.6 million claim. The other scheduled claims total approximately $600,000, of which $300,000 are secured and $247,000 unsecured. First Interstate's claim represents more than 90% of all scheduled claims in this case.

The Debtor has no business to reorganize. After the Debtor was released from prison and his continued 341 creditor's meeting was held, the Debtor stated under oath that has no operating business, no inventory, livestock or equipment. He has only ownership interests in a number of entities from which he derives some income, and he stated he has not derived income from personal services for his employment career - movie directing - for 10 years. The Debtor projected monthly income of almost $23,000 (from distributions from wholly owned corporations that own movie residuals [royalties], Schedule I) and expenses of almost $29,000 (Schedule J). The Debtor has no knowledge as to the accuracy of his Bankruptcy Schedules or monthly reports.

Until April of 2014, the Debtor was incarcerated in federal prison almost six months after this case was filed. All actions and filings have been taken by his wife, a non-debtor, acting under a power of attorney. Although the Debtor filed his Chapter 11 petition in October 2013, the Debtor's first monthly operating reports were filed on February 3, 2014 (3 months late) and his January 2014 report was not filed until April 8, 2014 (almost two months late). The Debtor has not filed a Chapter 11 plan in the six months this case has been in existence and he has not listed for sale his major asset, the real property he calls the "Bear Claw Ranch".

## SUMMARY OF ARGUMENT

The Debtor filed his case in bad faith, has administered it in violation of the Bankruptcy Code, has not filed a Chapter 11 plan and is unable to have a plan confirmed. Instead, the Debtor has done little to advance this case. Further, the Debtor has failed to timely file monthly reports, failed to file any Fed.R.Bankr.P. 2015.3 reports, failed to indicate the source of revenues claimed by the Chapter 11 estate and is unable to attest to the accuracy of his Schedules or monthly reports. The Debtor has also failed to indicate the whereabouts of more than $100,000 in bank deposits that he lists in his Schedule B. Further, the Debtor's estate is operating at a cash flow loss, thereby diminishing the value of the estate. Some of this results from the Debtor's post-petition payment to selected creditors the Debtor lists as being oversecured. The Debtor's only ability to pay his creditors is from sale of the Bear Claw Ranch, which the Debtor refused to sell for a reasonable price pre-petition, thereby forcing First

4

Interstate to resort to the foreclosure sale that was stayed by the Debtor's last minute Chapter 11 filing. The Debtor did not schedule claims of Neil Anderson or Patricia Kemper, both of whom have filed proofs of claim totaling $5,000,000 allegedly resulting from an automobile collision in 2011 with a vehicle driven by the Debtor. Of course, the Debtor's felony conviction and both pre- and post-petition incarceration have impaired any ability he has to pay his creditors or to reorganize.

Section 1112(b) of the Bankruptcy Code authorizes the Court to dismiss or convert this case to a Chapter 7 for "cause." This case should not be dismissed. Doing so would allow the Debtor to attempt to further delay First Interstate and other creditors from seeking payment in full. The Debtor has no business operations that can be reorganized; he only needs to liquidate assets (and sale of the Bear Claw Ranch, as well as his wholly owned corporations that reportedly own movie royalties, will complete the liquidation). Consequently, placing this case in the hands of an independent Chapter 7 trustee is appropriate.

Appointment of a Chapter 11 trustee is an alternative, but the inability to confirm a Chapter 11 plan precludes this remedy, especially when no reorganization is contemplated or even possible. For these reasons, First Interstate requests that the Court convert this case to a Chapter 7 liquidation.

## ARGUMENT

The Court may convert this case from a Chapter 11 to a Chapter 7 case as specified by 11 USC § 1112(b). The listed factors the Court may consider are set forth in 11 USC § 1112(b)(4), and as it relates to this case include the following:

(A)   Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

(B)   Gross mismanagement of the estate.

(F)   Unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.

(G)   Failure to attend the Section 341(a) creditor's meeting.

In addition, the Debtor's filing of his Chapter 11 petition and administration of his case violate the Bankruptcy Code's good faith requirement and constitute additional grounds for conversion. *In re Dahlstrom,* 963 F.2d 382, 1992 WL 112238 (10th Cir.) (citing *In re Jartran*, 886 F.2d 859, 867 (7th Cir. 1989)). In the *Dahlstrom* case, the Tenth Circuit joined the supermajority of other circuits in ruling that a case may be dismissed or converted for lack of good faith. *See In re SGL Carbon Corp.,* 200 F.3d 154, 160-161 (3rd Cir. 1999) (and cases cited from the First, Second, Fourth, Fifth, Sixth, Eight, Ninth and Eleventh, Circuits).

A discussion of the relevant Section 1112(b) expressed factors follows.

**Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.**

In this case, the Debtor projected monthly income of $22,692 and expenses averaging $28,591, resulting in a projected cash flow deficit of $5,899/month. The

monthly receipts and expenses the Debtor reports vary widely from those projections. The Debtor reported only $10,000 in receipts for the 6 week period ending November 30, 2013; $12,601 for December 2013, $13,000 for January and $14,500 in February 2014. This averages only about $11,000/month – or less than half the projected amount. The Debtor reports paid monthly expenses averaging slightly more than $11,0000, which indicates a deficit cash flow. However, the Debtor also reports accounts payable of $9,289.32 as of February 28, 2014 [and no accounts receivable] indicating the cash flow deficit is even worse. Expenses actually exceed income by close to $2,000/month. In addition, the Debtor reports he is delinquent in paying taxes. Consequently, the assets of the Debtor's estate are being depleted. The Debtor does not operate a business and will not be rehabilitated; he will only be liquidated. In addition, First Interstate is an oversecured creditor, which entitles it to recover post-petition accrued interest which accrues annually in the amount of $586,330, or $48,860/month. This amount totals close to $300,000, just since this Chapter 11 case was filed and further depletes the Debtor's bankruptcy estate. Thus, cause under 11 USC § 1112(b)(4)(A) exists to convert this to a Chapter 7 case.

Further, the Debtor has no way to have a plan confirmed. The Debtor has no cash flow to support plan payments and constantly growing liabilities due to First Interstate's accruing interest. Thus, the Debtor cannot pay creditor claims within the five year maximum period under 11 USC § 1129(a)(15) that applies to an individual Chapter 11 debtor.

**Gross mismanagement of the estate.**

The Debtor has been administering this case under a power of attorney. To the extent this is even authorized, administration has been grossly mismanaged. The list of untimely, incomplete and defective administrative obligations and reportings is exhaustive.

At the 341 creditor's meeting, the Debtor's attorney in fact was asked about the entities the Debtor owns and controls and from which the Debtor reportedly derives his income. She lacked knowledge of their operations. She was also asked about the Fed.R.Bankr.P. 2015.3 reports the Debtor is required to file for Bear Claw Cattle Company, Bear Claw Pictures, Camas Prairie, Land/McTiernan, Tongue River Pictures and Ten Sleep, both prior to the 341 meeting and every six months thereafter. The Debtor's attorney in fact promised to file those reports by November 30, 2013. They were not filed at that time and have never been filed. Consequently, the source of revenues for the Debtor's estate and the ability of the Debtor to receive those revenues [depending on the financial condition of those entities] is unknown. Perhaps this explains why the Debtor's reported revenues are only half of the projected amount. When the Debtor appeared in person at his continued 341 meeting after being released from prison, he professed that he had no personal knowledge of his Schedules, had not reviewed his Schedules and could not articulate whether his assets were properly listed or valued and knew nothing about the monthly financial reports filed in his case.

The Debtor is also required to file monthly financial reports. The first reports were filed three months late and the January 2014 report two months late. Further, the Debtor has filed only "Small Business Operating Reports" for those months. However, the Debtor is not a "small business debtor" as defined in 11 USC § 101(51D) because his noncontingent, undisputed, liquidated secured and unsecured debts exceed the $2,490,925.00 threshold by double. Thus, the monthly reports are deficient and non-complying, The reports also fail to state, or show, the source of revenues and do not indicate the Debtor's assets or pre- or post-petition liabilities. Consequently, creditors have no meaningful information regarding the financial condition of the Debtor's estate.

The Debtor listed more than $110,000 in cash in banks in which he personally held an interest. However, the Debtor's first monthly financial report shows that only $1,739 was transferred to the DIP bank account. And the Debtor states that he has no other bank accounts. Consequently, more than $100,000 in cash is unaccounted for.

The Debtor's monthly reports also show that during the pendency of this Chapter 11 case the Debtor has been making $700/month payments to the IRS for a pre-petition tax obligation and $1,997/month payments to First Federal Savings Bank on an oversecured pre-petition debt. These payments are improper and detrimental to the estate.

The Debtor also states that he has not paid his bills on time, has not filed tax returns or paid taxes on time in any month, and lists unpaid expenses that total $9,289.32 as of February 28, 2014, which exceeds cash on hand.

9

These deficiencies indicate that the Debtor has no understanding of the duties of a Chapter 11 debtor in possession nor do the reports and filings comply with the Bankruptcy Code.  Simply stated, this estate has been grossly mismanaged and evidences the need to convert this to a Chapter 7 case under the management of a competent, independent trustee.

**Unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.**

As indicated above in the "Gross mismanagement" discussion, the Debtor has ignored the obligation to file the Fed.R.Bankr.P. 2015.3(c) reports for Bear Claw Cattle Co., Bear Claw Pictures, Camas Prairie, Land/McTiernan, Tongue River Pictures, and Ten Sleep, all of which the Debtor claims to own 100% of the stock.  The Debtor's monthly financial reports are also noncompliant.  This constitutes cause for conversion to a Chapter 7 case under 11 USC § 1112(b)(4)(E).

**Debtor's failure to attend the 341 creditor's meeting**

The record reveals that the Debtor failed to attend his 341 creditor's meeting. The reason was simple – he was an inmate in federal prison. Without his attendance, neither his creditors nor the Office of the U.S. Trustee were able to have their questions answered (because his attorney in fact was unable to do so).  Thus, the meeting was continued until he is released from prison.  In the meantime, the Chapter 11 filing has served only one purpose – to stay actions of creditors to recover their claims.  When he

finally did appear at his continued 341 meeting on April 16, 2014, the Debtor had no knowledge of his Schedules or other filings and had not reviewed them.

**Bad faith filing and administration.**

More importantly, cause for conversion exists because the Debtor has not acted in good faith. Good faith implies an honest intent and genuine desire by the petitioner to use the Bankruptcy Code to effect a plan of reorganization and not merely as a device to serve a sinister or unworthy purpose. *In re Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1971). A Chapter 11 case may be converted under 1112(b) for bad faith alone even if a potentially viable reorganization plan had been proposed. This protects the integrity of the bankruptcy courts by limiting the bankruptcy courts' equitable powers to assist only good faith petitioners. *See In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

Courts have identified numerous factors as evidence that a debtor's bankruptcy was filed for purposes other than to reorganize or methodically liquidate assets and pay creditors under Chapter 11; which equates to bad faith. No one factor controls and no total number of factors must be found to support conversion. *See, e.g. In re Hall,* 887 F.2d 1041, 1044 (10th Cir. 1989); *In re Little Creek Development,* 779 F.2d at 1072-1073; *In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1027; *In re Albany Partners, Ltd.,* 749 F.2d 670, 673-674 (11th Cir. 1984); *In re Carolin Corp.,* 886 F.2d 693, 700, 703-705 (4th Cir. 1989). In discussing each factor below, First Interstate is informing the Court of the Debtor's actions and intentions that demonstrate bad faith.

11

**No employees, only principals**

The Debtor is not a real business, has no employees and never had employees whose jobs would be preserved by a reorganization. The only business activity related to the Debtor is that he, reportedly, will develop or sell the Bear Claw Ranch real property, but he has no employees to assist him.

**Little or no cash flow to make plan payments**

The Debtor has limited revenues and no positive cash flow. During the period this Chapter 11 case has been administered, the Debtor reports total income of about $50,000 and expenses of more than $43,000, not including accounts payable in excess of $9,000 and accruing interest of almost $300,000. The source of the Debtor's income has not been disclosed. After taking into account the accounts payable and accruing interest, the Debtor's reported financial results shows a negative cash flow for the five month term of this Chapter 11 case of over $300,000. This reveals that the Debtor is unable to generate revenues to make plan payments of any kind. Accordingly, the Debtor has now demonstrated he has no ability to fund plan payments.

**Failure to file an acceptable plan within a reasonable time.**

After six months, the Debtor has not filed a plan. "Dismissal under 11 USC § 1112(b)(2) is appropriate where the debtor's failure to file an acceptable plan after reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason." *In re Hall,* 887 F.2d at 1044 (failure to file plan within eight

12

months after filing Chapter 11 petition indicated debtor unable to file acceptable plan in the future).

### Few unsecured creditors

The Debtor lists only ten unsecured creditors, consisting of four credit card companies and six law firms, whose claims total $194,000, or roughly 2% of value of the Debtor's assets. Notably, none of the unsecured creditors are suppliers of goods or services to a business.

### The Debtor's problems result from a dispute with a single creditor.

A bankruptcy filing that results from a dispute with a single creditor evidences the debtor's purpose in filing for bankruptcy was motivated by contesting that dispute instead of reorganizing in a Chapter 11 proceeding. The sole reason for the Debtor's Chapter 11 filing in this case was to prevent First Interstate from foreclosing its mortgage after the Debtor rejected a reasonably priced offer to sell his ranch. This offer exceeds the claims the Debtor schedules by a large margin. This shows that the Debtor seeks to speculate in the real estate market, using the creditor's claims to finance his speculation and subjecting the unsecured creditors to risk of loss because First Interstate holds a first lien and is entitled to recover post-petition interest.

### The Debtor does not have an honest intention to reorganize.

To fulfill the debtor's role in a Chapter 11 case, the debtor must have an honest intention to reorganize. The Debtor's only motive in filing for bankruptcy protection was to hold First Interstate at bay, preventing First Interstate from collecting its

mortgage loan. The defective administrative actions taken during the first six months of this Chapter 11 case, and his failure to file a plan, evidence that the Debtor had no intention of reorganizing or arriving at a consensual Chapter 11 plan. Rather, he filed his Chapter 11 petition simply to take advantage of the automatic stay imposed by 11 USC § 362 while he served his federal prison term.

### FIRST INTERSTATE'S CONSET TO HEARING ON MOTION

Pursuant to 11 USC § 1112(a)(2)(B)(3), a hearing on First Interstate's Motion to Convert is required to be held within 30 days after the Motion is filed. First Interstate has been advised that the Bankruptcy Court's docket will not allow a hearing to be held within the 30 day period. Accordingly, First Interstate consents to a hearing on its Motion after such 30 day period.

### CONCLUSION

The Debtor filed this case for one reason and one reason alone – to deny First Interstate the right to recover its loan balance. He improperly filed for bankruptcy protection with no chance of reorganizing because he has no business operations and no business to reorganize. He has obtained, and seeks to continue to obtain, the advantage of the automatic stay so he can speculate in the real estate market, all the while draining cash from his wholly owned subsidiaries. The Debtor filed his petition in bad faith and has administered this case in bad faith. Consequently, cause exists under 11 USC § 1112(b) to convert this case from Chapter 11 to Chapter 7.

For the foregoing reasons, First Interstate respectfully asks the Court to convert this case to a Chapter 7 case.

Dated this 21st day of April, 2014.

/s/
James R. Belcher
Tim Stubson
CROWLEY FLECK PLLP
237 Storey Boulevard, Ste. 110
Cheyenne, WY 82009
307 426-4105
Attorneys for First Interstate Bank

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing FIRST INTERSTATE'S MOTION TO CONVERT CASE TO CHAPTER 7 via the Court's electronic mailing service (CM/ECF) on all of the persons registered for electronic service, including counsel for the Debtor and the United States Trustee, at the time this objection was filed and by mailing a copy to all creditors on the mailing matrix in this case, a copy of which is attached to the Notice of Hearing accompanying this Motion.

/s/ James R. Belcher