FILED

2:43 pm, 9/22/14
Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JOHN CAMPBELL MCTIERNAN, JR. | ) | Case No.  13-20987 |
| | ) | Chapter 11 |
| Debtor. | ) | |

## OPINION ON MOTION TO CONVERT CASE TO CHAPTER 7

On August 27, 2014, the Motion to Convert Case to Chapter 7, filed by First Interstate Bank ("Bank") came before the court for an evidentiary hearing.  John McTiernan, Jr. ("Debtor") filed a response.  At the conclusion of the hearing, the court took the matter under advisement.  Having reviewed the record, testimony and other evidence, and parties' arguments, the court is prepared to rule.

**Jurisdiction**

This court has jurisdiction over this contested matter under 28 U.S.C. § 157.  This is a core proceeding within the definition of 28 U.S.C. § 157(a)(2)(A).[1]

**Findings of Fact**

Debtor's voluntary chapter 11 bankruptcy petition was filed on October 18, 2013.  At the time of filing, Debtor was incarcerated and the petition was filed by Gail Sistrunk, Debtor's spouse, with a power of attorney.  After an updated power of attorney was filed, the court entered its *Order Defining the Allowed Use by the Debtor in Possession of a*

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

*Power of Attorney*, allowing Ms. Sistrunk to "appear and sign for the Debtor in all matters before the Court consistent with the General Power given to her by the Debtor" due to the extraordinary circumstances Debtor's incarceration presented.

Debtor's initial § 341 meeting of creditors was scheduled for November 18, 2013. The United States Trustee continued and rescheduled the meeting to April 16, 2014. At that time, Debtor attended the meeting.

On August 9, 2007, Bank loaned Debtor the amount of $5,500,000.00 securing the note with the collateral, commonly described as: Bear Claw Ranch, 5 Columbus Drive, 23 Columbus Drive and 20 Columbus Drive near Sheridan, Wyoming. According to Marlin Norling, Assistant Vice President of First Interstate Bank and loan officer with personal knowledge of the loan transaction, the unpaid balance as of the date of the hearing was $6,100,224.92, and accruing interest at the rate of $1,606.38 per day.

The properties were appraised by Brent Brooks, ("Brooks") on behalf of the Bank in June 2014. The properties were appraised to have the following values:

| | |
|---|---|
| Bear Claw Ranch | $8,385,000.00 |
| 5 Columbus Drive | 130,000.00 |
| 23 Columbus Drive | 200,000.00 |
| 20 Columbus Drive | 230,000.00 |

The collateral also appears to include an assignment of 720 acres of a State of Wyoming lease.[2] Mr. Brooks estimated that it would take one year to market and sell the property.

In June 2014, the Debtor retained, with the court's approval, John Pierce of

---

[2] Bank's Exhibit No. 2.

Sotheby's Realty, Jackson, Wyoming to market the Bear Claw Ranch. Cyndee Jacobson, a residential real estate professional in Sheridan, Wyoming was retained, also with the court's approval, to market and sell the Columbus Drive properties.

Debtor is a film maker with numerous hit films to his credit. He reported to prison in April 2013. He testified that his petition and schedules were prepared by Ms. Sistrunk, and filed to stop the foreclosure of the Bear Claw Ranch to preserve Debtor's equity in the property. Debtor testified that he reviewed the petition, schedules and other bankruptcy documents upon his release in February or March, 2014. Debtor testified that he intends to liquidate the Sheridan properties and move using the equity from the sale proceeds to pay his creditors. He stated that he wants to "preserve the equity and dig himself out of this financial hole." As of the day of the hearing, Debtor testified that he had a screen play and expected to receive income of approximately one million dollars. He admitted that there is an offer for the purchase of the ranch for the amount of $7.3 million dollars, but feels that the buyer's offer is too low.

Ms. Sistrunk testified that, acting under a power of attorney to file Debtor's bankruptcy, she provided the information for preparing the petition and schedules and she prepared the monthly operating reports. Both the Debtor and Ms. Sistrunk testified that she handles the financial side of Debtor's life. She also testified that the Debtor's 2012 tax return, balance sheets or profit and loss statements have not been prepared since Debtor's accountant's employment was terminated. Ms. Sistrunk pays some bankruptcy

estate expenses separate from the DIP account, which the court finds subsidizes Debtor's

bankruptcy estate. Ms. Sistrunk stated she is owed about $9,000.00. With Ms. Sistrunk's

contributions, the bankruptcy estate shows a positive cash flow in the amount of

$3,210.00 for the period October, 2013 to June, 2014. However, the court's review of the

record shows that July 2014 reflects an additional loss in the amount of $2,441.74. It

appears that Debtor's cash flow is nearly at a "break-even" point. Debtor and Ms.

Sistrunk testified that Debtor's current income is based upon distributions and residuals

from past films.

## Discussion

Bank moves to convert this chapter 11 bankruptcy case to a chapter 7 case under

§ 1112(b), alleging: (1) Debtor filed his case in bad faith; and, (2) cause exists to convert

this case as there is (a) a substantial and continuing loss to or diminution of the estate and

absence of a reasonable likelihood of rehabilitation;[3] (b) gross mismanagement of the

estate;[4] (c) unexcused failure to timely satisfy filing or reporting requirements established

by the Bankruptcy Code or by any rule applicable to a case under Chapter 11;[5] and, (d)

failed to attend the Section 341(a) meeting of creditors.[6]

---

[3] § 1112(4)(A).

[4] § 1112(4)(B).

[5] § 1112(4)(F).

[6] § 1112(4)(G).

The Bankruptcy Code states,

"(b) ...[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7, or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of the creditors and the estate."[7]

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interests establishes that –

(A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under (4)(A) –

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court."[8]

Additionally, the Bankruptcy Code requires,

"The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph."[9]

A chapter 11 bankruptcy case may be converted or dismissed for cause. Thus, the

---

[7] § 1112(b)(1).

[8] § 1112(a)(2).

[9] § 1112(a)(3).

threshold issue under § 1112(b) is cause. The movant bears the burden of establishing

cause by a preponderance of the evidence.[10] If cause is established, the burden shifts to

the debtor to prove that it falls within the "unusual circumstances" exception to

mandatory conversion or dismissal recognized by § 1112(b)(2).[11]

The court notes that the Bank consented to scheduling the evidentiary hearing

beyond the deadline under § 1112(a)(3). Additionally, due to Debtor filing *Debtor's*

*Supplement to the Record* and the *Bank's Motion to Strike,* the court delayed entering its

ruling on the Bank's Motion to Convert until disposition of the Motion to Strike. The

court finds that there are compelling circumstances that prevent it from meeting the

requirement of "deciding the motion not later than 15 days after commencement of the

hearing."

## (1) Case filed in bad faith

Determining whether the debtor's filing for bankruptcy relief is in good faith

depends upon the bankruptcy court's on-the-spot evaluation of the debtor's financial

condition, motives, and the local financial realities. Findings of lack of good faith based

on § 1112(b) have been predicated on certain recurring but non-exclusive patterns.

Several, but not all, of the following conditions usually exist. The debtor has one asset,

such as a tract of undeveloped or developed real property. The secured creditors' liens

---

[10] *In re Vaughan Company, Realtors,* No. 11-10-10759, 2013 Bankr. LEXIS 2091 (Bankr. N.M., May 21, 2013).

[11] *In re L & T Machining, Inc.,* Case No. 11-11045, 2013 Bankr. LEXIS 2693 (Bankr. Kan., July 3, 2013).

encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments. Typically, there are only a few, if any unsecured creditors whose claims are relatively small. The property has been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Filing a bankruptcy petition on the eve of a schedule foreclosure sale is not, by itself, sufficient to constitute bad faith. The determination of the question whether to dismiss a case for bad faith requires an examination of all the particular facts and circumstances in each case.[12]

The court's review of the Debtor's financial condition reveals that prior to his criminal legal proceeding, Debtor's income was substantially more than this court generally sees of a debtor in bankruptcy, generally in the millions of dollars. Debtor testified that he intended to work to regain his prior income level and has a contract pending for the sale of a screen play. The real property that Debtor is attempting to sell is prime property located in an area of Wyoming with high income properties. The court's review of Debtor's operating reports reflect that his cash flow is limited but he appears to have a potential source of a large income to sustain the bankruptcy estate while selling the real property. The Bank is adequately protected by an equity cushion of over 2.8 million

---

[12] *In the Matter of Little Creek Development Company, Debtor, et al. v. Commonwealth Mort. Corp.*, 779 F.2d 1068 (5th Cir. 1986), citing *In re Surgical Associates, Inc.*, Case No. 13-10081, 2013 Bankr. LEXIS 1070 (Mar. 21, 2013, Bankr. N.D. Okla.).

dollars. The court is aware that the equity is eroding at the rate of $1,606.38 per day.[13]

Debtor's schedules reflect that he lists numerous secured, priority and unsecured creditors with varying claim amounts. Debtor admitted that his bankruptcy petition was filed to stop the foreclosure sale; preserve the equity and pay his debts. The court finds Debtor's testimony credible and his intent, genuine. In examining the facts and circumstances, the court does not find that Debtor filed his bankruptcy case in bad faith.

(2) Cause exists to convert

(a) Substantial and continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation

In evaluating whether a bankruptcy debtor has suffered continuing losses or diminution of the estate to support conversion or dismissal of a chapter 11 bankruptcy case, the court considers all relevant information, including the bankruptcy estate's financial history and financial prospects and the financial records on file in the case. Under certain circumstances, negative cash flow alone can establish a continuing loss to or diminution of the estate for the purposes of establishing the first element. Diminution of the estate may also be established by showing declining asset values.[14]

As the court previously found, with Ms. Sistrunk's financial assistance, the bankruptcy estate's cash flow is approximately breaking even each month. Overall, the

---

[13] The court calculated the equity amount by subtracting the amount owed to the Bank on the date of the hearing from the appraised values. The court also calculates that the accruing interest will cost the estate approximately $586,328.00 over the span of one year.

[14] *Vaughan* at 21.

accruing interest and Ms. Sistrunk's subsidies reflect that Debtor's estate is operating at a

loss. Debtor admits his intent is to liquidate the real property and move, not reorganize.

In determining whether the debtor can rehabilitate, the court does not find that an

interpretation of "rehabilitation" precludes liquidation under a chapter 11 bankruptcy

case. The testimony did not reflect that the Bear Claw Ranch is declining in value. As

stated previously, there is a continuing loss and diminution of the estate. However the

court does not find that there is an absence of a reasonable likelihood of rehabilitation by

the debtor. The Debtor may successfully liquidate. Bank failed to meet its burden that

cause exists to convert the case under § 1112(4)(A).

(b) Gross mismanagement of the estate

    The Bank asserts that cause to convert exists under § 1112(b)(4)(B) based on

Debtor's gross mismanagement of the estate. The alleged gross mismanagement must

occur post-petition.[15] Examples of gross-mismanagement found by several courts

include: failure to pay outstanding real property tax and employment tax obligations;[16]

debtors' paid for personal life insurance rather than other expenses;[17] debtor's post-

petition behavior supported a finding of gross mismanagement due to Debtor's failure to

submit monthly operating reports depicting the Debtor's income and expenses by

---

[15] *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799, 809 (Bankr. D. Colo. 2013).

[16] *In re Builders Group & Dev. Corp.*, Case No. 13-04867, 2014 Bankr. LEXIS 2092, (Bankr. D. P.R., May 8, 2014).

[17] *In re Patel*, Case No. 5:11-bk-73416, 2012 Bankr. LEXIS 4215, (Bankr. W.D. Ark., Aug. 22, 2012).

property;[18]

Bank argues that cause exists to convert Debtor's bankruptcy case based upon Debtor's gross mismanagement of the estate. Ms. Sistrunk is not only Debtor's spouse, but also takes care of the finances. Ms. Sistrunk testified that post-petition taxes are paid on the real property; explained the questionable payments reflected on Debtor's bank statements for the estate as being domestic support obligation, child support obligation or foreign judgment payments. Debtor and Ms. Sistrunk explained that Debtor's income resources from distributions and residuals payments from past film projects. The court's review of the record reflects that the Debtor failed to timely file numerous monthly operating reports required by the UST, and the initial report required under Rule 2015.3.

Gross mismanagement is not defined in the Bankruptcy Code. Mismanagement is defined as "ineptly, incompetently or dishonestly" managing. Gross is defined as "glaring, flagrant, very bad."[19] The court finds that there is gross mismanagement of this estate. A debtor in bankruptcy must comply with the reporting requirements so that creditors and the court may determine whether the bankruptcy case is being properly administered while a debtor enjoys the benefits of the bankruptcy process. Debtor, in this case, has not timely complied with the reporting requirements. This failure appears to be glaring obvious as Debtor's counsel is an experienced bankruptcy attorney and well aware of these deadlines

---

[18] *In re Halal 4 U LLC*, Case No. 08-15216, 2010 Bank. LEXIS 3335 (Bankr. S.D.N.Y., Sept, 24, 2010).

[19] Your Dictionary, http://www.yourdictionary.com/gross.

and requirements. The court finds that Bank met its burden establishing cause to convert under § 1112(4)(B).

(c) Unexcused failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code or by any rule applicable to a case under Chapter 11

Wyoming LBR 2015-3 requires that a Debtor in Possession "timely file...all other required post-petition tax returns with the Internal Revenue Service. Ms. Sistrunk testified that Debtor has not filed his 2013 federal tax return, but properly requested an extension.

Fed. R. Bankr. P. 2015.3 requires a chapter 11 debtor-in-possession to file periodic financial reports of the value, operations and profitability of each entity in which the debtor or the estate holds a substantial or controlling interests. The first report "shall be filed no later than seven days before the first date set for the meeting of creditors" with subsequent reports filed "no less frequently than every six months thereafter."[20] Debtor filed his first report on July 3, 2014. Debtor should have filed the first report on or before November 11, 2013.

The United States Trustee established Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustee. The debtor must file a monthly operating report by the 21st day of the month following the report period.

The court's review of the docket reflects the monthly operating reports were filed as indicated:

---

[20] Fed. R. Bankr. P. 2015.3(a).

| For month of: | Dated report filed |
|---|---|
| October - November, 2013 | February 3, 2014 |
| December, 2013 | February 3, 2014 |
| October - November, 2013 | February 25, 2014 |
| December, 2013 | February 25, 2014 |
| February, 2014 | March 26, 2014 |
| January , 2014 | April 8, 2014 |
| March, 2014 | May 7, 2014 |
| April, 2014 | May 7, 2014 |
| May, 2014 | June 23, 2014 |
| June, 2014 | August 4, 2014 |
| July, 2014 | August 25, 2014 |
| August, 2014 | Not filed |

Bank asserts that cause exists to convert the Debtor's bankruptcy case to a chapter 7 based upon Debtor's failure to timely filed required reports. As previously discussed, the court found that Debtor failed to timely file his required reports. The bank established cause to convert the Debtor's case under § 1112(4)(F).

(d) Failed to attend the Section 341(a) meeting of creditors.

The court noted previously, that the Debtor's § 341 meeting of creditors was rescheduled by the UST. The Bank did not object. Debtor testified that he attended the meeting in April, 2014, upon his release from prison. The court finds that the Bank failed to meet its burden that Debtor failed to attend the creditors' meeting.

## Exception to conversion under "unusual circumstances"

As stated by the District of New Mexico Bankruptcy Court, the BAPCPA's amendments to §1112(b)(1) limit a bankruptcy court's discretion to deny a motion to convert or dismiss a chapter 11 bankruptcy case for cause; if cause is established, conversion or dismissal is mandatory unless the debtor falls within the "unusual circumstances" exception.[21]

Debtor admits that he filed for bankruptcy protection to halt Bank's foreclosure proceeding. Debtor asserts that the equity in the Bear Claw Ranch will allow him to pay his debts. Due to his incarceration, this case has not proceeded as a "normal" bankruptcy case generally does. Debtor did not attend his initial § 341 meeting. He did attend the rescheduled meeting upon his release. Debtor has not filed a proposed plan. Debtor did not timely file reports required by the Bankruptcy Code, Bankruptcy Rules and UST requirements. His reports were filed, mostly en masse to rectify this delinquency. Debtor retained, with court approval, real estate agents to market and sell the estate's real property.

The Bank's witnesses testified regarding the values of the property and amount of its secured claiming, providing the court evidence that there is substantial equity in the property. Additionally, the Debtor testified regarding his efforts to regain his financial footing since his release from prison. The Debtor's testimony was credible and the court

---

[21] *Vaughan* at 21.

finds his intent to be genuine. Debtor has the potential income to maintain the estate during the pendency of this estate. The court finds that: (1) unusual circumstances exist to apply the exception to conversion under § 1112(b); and, (2) converting the case is not in the best interest of the estate, debtor's secured creditors other that the Bank, the Debtor's priority or unsecured creditors. The court finds that Debtor is capable of administering this case, as he is no longer incarcerated, for the benefit of selling the property and paying all creditors from the proceeds.

Debtor has not filed a disclosure statement or plan as required under §§ 1121(e) and 1129(e). However the court finds that there is a reasonable likelihood that a plan involving liquidation can be confirmed within a reasonable time. The court also finds that Debtor's failure to timely file reports can be cured by Debtor's diligent adherence to the Bankruptcy Code, Fed. R. Bankr. Pro and UST chapter 11 reporting requirements.

In conclusion, Bank failed to carry its burden that Debtor's chapter 11 bankruptcy case should convert to a chapter 7 due to lack of good faith; the second element under §1112(4)(A), (likelihood of rehabilitation); and, failure to attend his §341 meeting of creditors.

Bank met its burden that the case should be converted due to the gross mismanagement of the estate and Debtor's failure to timely file required reports. The court found that the unusual circumstance exception exists. The court denies Bank's motion to convert and shall require Debtor to (1) file a disclosure statement and plan; (2)

timely file all required reports; and, (3) strictly comply with all requirements of the

Bankruptcy Code, Federal Rules of Bankruptcy Procedure and Wyoming Local

Bankruptcy Rules during the pendency of this bankruptcy case.

This opinion constitutes the Court's findings of fact and conclusions of law. A

separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 22 day of September, 2014.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
        James Belcher
        Ken McCartney